NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1508
(Serial No. 76/207,565)

IN RE INNOVATION DEVELOPMENT GROUP, INC.

_____

DECIDED:  March 14, 2005

_____

Before SCHALL, GAJARSA, and LINN, Circuit Judges.

SCHALL, Circuit Judge.

DECISION

Innovation Development Group, Inc. ("Innovation Development") appeals the decision of the United States Patent & Trademark Office's Trademark Trial and Appeal Board ("Board") sustaining the refusal of the Examining Attorney to register the mark "TICK TAPE" in typed drawing form for a "hand tool for removing insects attached to human or animal hosts."  In re Innovation Dev. Group, Inc., Serial No. 76207565 (TTAB Apr. 30, 2004) ("Request for Reconsideration"); In re Innovation Dev. Group, Inc., Serial No. 76207565 (TTAB Feb. 11, 2004) ("Initial Decision").  We affirm.

DISCUSSION

I.

Innovation Development filed an intent-to-use application to register the mark TICK TAPE for the hand tool device described in the application.  At the request of the Examining Attorney, it also provided a copy of its published U.S. patent application describing the device as "a foam backing with an adhesive surface" that "will adhere to the body of the tick while the device is pulled away from the skin, resulting in the removal of the tick."[1]  The Examining Attorney, relying on section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), refused registration on the ground that the mark was merely descriptive of Innovation Development's hand tool.  Initial Decision, slip op. at 1.  Innovation Development appealed the refusal to the Board.  On February 11, 2004, the Board sustained the Examining Attorney's decision, finding that "[w]hen used in connection with a hand tool for removing insects attached to human or animal host, . . . the mark TICK TAPE would immediately indicate that one component of this hand tool is an adhesive tape and that the hand tool is particularly useful for removing ticks." Initial Decision, slip op. at 3.  Innovation Development subsequently filed a Request for Reconsideration, which the Board denied on April 30, 2004.  Request for Reconsideration, slip op. at 2.

This appeal followed.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

---

[1]    The application subsequently issued on April 13, 2004, as U.S. Patent No. 6,718,686 B2 ("the '686 patent").

## II.

We apply a limited standard of review to Board decisions, reviewing legal conclusions de novo and factual findings for substantial evidence. In re Pacer Tech., 338 F.3d 1348, 1349 (Fed. Cir. 2003). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938). Whether a mark is "merely descriptive" is a question of fact. In re Oppedahl & Larson LLP, 373 F.3d 1171, 1173 (Fed. Cir. 2004).

"A mark is merely descriptive if it 'consist[s] merely of words descriptive of the qualities, ingredients or characteristics of' the goods or services related to the mark." Id. (quoting Estate of P.D. Beckwith, Inc. v. Comm'r of Patents, 252 U.S. 538, 543 (1920)). The mark may still be merely descriptive even if it only describes one quality or characteristic of the good. In re Gyulay, 820 F.2d 1216, 1218 (Fed. Cir. 1987); see also Oppedahl & Larson, 373 F.3d at 1173. Under this standard, we have said that a mark is merely descriptive "if the ultimate consumers [would] immediately associate it with a quality or characteristic of the product or service." In re MBNA Am. Bank, N.A., 340 F.3d 1328, 1332 (Fed. Cir. 2003). "Evidence of the context in which a mark is used on labels, packages, or in advertising material directed to the goods is probative of the reaction of prospective purchasers to the mark." Application of Abcor Dev. Corp., 588 F.2d 811, 814 (CCPA 1978); see also In re Am. Fertility Soc., 188 F.3d 1341, 1346 (Fed. Cir. 1999).

III.

On appeal, Innovation Development contends that substantial evidence does not support the Board's finding that TICK TAPE is merely descriptive of its hand tool. First, Innovation Development argues that the Board did not identify any components of its tool that could be considered "tape." Nor could it, Innovation Development asserts, because, while the Board defined "tape" as "a continuous narrow flexible strip," the tool at issue requires "[s]ome rigidity . . . to be able to fold the tool as shown [in figure 4] of its patent application." Second, Innovation Development argues that there are many types of "tape," such as magnetic tape, and, therefore, describing something as "tape" does not necessarily mean it is "adhesive" tape. Moreover, Innovation Development urges that there are many products with adhesive surfaces that are not "tape," such as "post-it-notes" and decals. Third, Innovation Development argues that TICK TAPE is a suggestive mark because it requires "imagination, thought, and perception" to arrive at its qualities or characteristics. In particular, Innovation Development contends the Board inferred that a subset of the term "tape" included "adhesive tape," and that it further inferred that the subject hand tool fits within this subset because of its adhesive qualities. Finally, Innovation Development argues that, in any event, the Board should have resolved doubt as to whether the mark was merely descriptive in favor of Innovation Development.

In response, the Solicitor argues that the Board's decision is supported by substantial evidence. The Solicitor, citing In re Gyulay and In re Oppedahl & Larson LLP, supra, states that a mark does not need to describe every feature of a good in order to be found merely descriptive. Accordingly, the Solicitor argues that the Board's

decision is supported by substantial evidence because the Board found that when used in connection with the hand tool described in Innovation Development's patent application, the mark "would immediately indicate that one component of [the] hand tool is an adhesive tape and that the hand tool is particularly useful for removing ticks." With respect to Innovation Development's argument that not all tapes are adhesive tapes, the Solicitor contends the Board correctly determined that "the mere descriptiveness of a mark is not judged in the abstract, but rather is judged in relationship to the goods or services with which the mark is used." In this case, the Solicitor urges, the patent application shows that adhesiveness is an essential characteristic of Innovation Development's product. For this same reason, the Solicitor argues that we should reject Innovation Development's argument that not all adhesive products are "tape." The Solicitor also argues that TICK TAPE is not suggestive because it "does not create a separate nondescriptive meaning beyond the dictionary meaning of the terms."

We agree with the Solicitor that substantial evidence supports the Board's findings that TICK TAPE is merely descriptive. The Board found that "tape" has a broad definition that includes "adhesive tape."[2] Initial Decision, slip op. at 2. In addition, the Board found that Innovation Development intended to use the mark in the following context:

> A device for the removal of insects, particularly ticks, from a human or animal host includes a foam backing with an adhesive surface that folds along a central folding axis. The adhesive surface will adhere to the body of the tick while the

---

[2]     Innovation Development disputes this finding, arguing that it did not concede that "tape" means "adhesive tape," but only that "[a]dhesive tape is one of many possible types of tape." For purposes of this appeal, we assume that adhesive tape is one type of tape.

> device is pulled away from the skin, resulting in the removal
> of the tick.

Id. (quoting the '686 patent application's abstract). It would seem, therefore, that an essential feature of Innovation Development's product is a foam structure that folds around an insect, such as a tick, and has adhesive qualities so as to be capable of removing the tick from the host. Innovation Development's product consequently falls squarely within the definition of "tick tape."[3] Thus, we think substantial evidence supports the Board's finding that, as used in the context of Innovation Development's hand tool, "the mark TICK TAPE would immediately indicate that one component of [the] hand tool is an adhesive tape and that the hand tool is particularly useful for removing ticks," and that the mark is therefore merely descriptive.

For the foregoing reasons, the decision of the Board sustaining the refusal to register Innovation Development's mark is affirmed.

Each party shall bear its own costs.

---

[3] We are also not persuaded by Innovation Development's argument that its tool cannot be tape because its tool must have "some rigidity" and, therefore, cannot be considered a "flexible strip." The patent application expressly states that the "adhesive surface . . . folds along a central folding axis." (Emphasis added.)