**JUDSON DUNAWAY CORPORATION v. HYGIENIC PRODUCTS CO.**

**HYGIENIC PRODUCTS CO. v. JUDSON DUNAWAY CORPORATION.**

Nos. 4440, 4441.

United States Court of Appeals
First Circuit.

Dec. 15, 1949.

462

John P. Carleton, Manchester, New Hampshire, (Manvel Whittemore, New York City, McLane, Davis, Carleton & Graf, Manchester, New Hampshire, and Emery, Varney, Whittemore & Dix, New York City, with him on brief) for Judson Dunaway Corporation, defendant.

Irving H. Soden, Concord, New Hampshire, (Frank J. Sulloway, Concord, New Hampshire, Harry Frease and Joseph Frease, Canton, Ohio, Sulloway, Piper, Jones, Hollis & Godfrey, Concord, New Hampshire, and Frease & Bishop, Canton, Ohio, with him on brief) for The Hygienic Products Company, plaintiff.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and CLIFFORD, District Judge.

WOODBURY, Circuit Judge.

These are cross appeals from a final judgment entered by the United States District Court for the District of New

Hampshire in a suit for trade-mark infringement and unfair competition. Federal jurisdiction over both causes of action under 28 U.S.C.A. § 1338(a) and (b) and under its predecessor statute and the rule of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, is clear. Moreover the facts necessary to establish federal jurisdiction on the ground of diversity of citizenship and amount in controversy are conceded. Our jurisdiction over these appeals under 28 U.S.C.A. § 1291 is obvious.

The Hygienic Products Company, an Ohio corporation, is the manufacturer of a powder, the last patent for which expired in 1932, for cleaning watercloset bowls and automobile radiators by chemical action. It began to use the name "Sani-Flush" for its product in 1911, and it has used that name ever since. And, at the same time, it began to use as a trade mark a representation against a plain background of a young woman with an expression of pleasure on her face bending gracefully from the waist in the act of pouring the contents of an approximately pint sized can held in her outstretched hand into an open watercloset bowl. During the years from 1916 to 1940 it obtained several registrations of its mark under the Trade Mark Act of 1905, as amended, some with and some without its trade name printed in extrabold italics, each successive registration showing the woman dressed in the style current at the date thereof and a watercloset bowl of contemporaneous design, but otherwise substantially similar to the original registration, with the exception that the women in the earlier registrations were shown dressed as housemaids, whereas in the last two the woman is depicted as a rather dignified and matronly housewife. Over the past thirty-eight years it has made extensive use of its name "Sani-Flush" and of its representation in the form current at the time of use, in connection with the sale of its product in local, interstate and foreign commerce. Its business prospered from the beginning and is now substantial.

It has always marketed its product in a 22 ounce cylindrical can of conventional proportions bearing a predominantly yellow label upon which its trade name and its trade mark in the current form are prominently displayed, and upon which, in addition to directions for the use of the product, appear the laudatory slogans "Quick", "Easy", "Sanitary", "Cleans without fuss or muss." In its advertising, which has been nationwide, it has made extensive use of its trade name and its trade mark, and it has also made extensive use of the representation of attractive young women in fashionable dress in a bathroom setting pouring the contents of one of its cans into an open watercloset bowl.

The defendant, Judson Dunaway Corporation, a New Hampshire corporation, is a comparative newcomer in the field. In 1937 it began to manufacture a powder substantially similar to the plaintiff's, which it called "Vanish", as it concededly had the right to do since the plaintiff's patents had expired. At first, it marketed its product in a 21 ounce oval can bearing a black and white label on which its name was prominently displayed in block capital letters above a representation of an open toilet bowl, a stream of material being shown flowing from the bottom of the letter "I" in the word "Vanish" into the bowl. Subsequently it changed the style of its can to a tall cylindrical one of the same capacity, and it changed its label to one predominantly blue, still, however, prominently displaying its name (which it had registered under the federal act) and the stream of material flowing from it into a toilet bowl as before. It began to advertise its product extensively in various ways in 1937, but its activities met with no objection from the plaintiff until almost ten years later when it began to use, sometimes against a plain background and sometimes in a bathroom setting, first, a pictorial representation of a woman pouring from one of its cans into a watercloset bowl, and later a pictorial representation of a hand, obviously a woman's, similarly pouring from one of its cans into a watercloset bowl.

The plaintiff formally notified the defendant early in 1947 that it objected to these forms of advertising, and the defendant, asserting its right to continue to so advertise, the plaintiff on May 31 of that year, brought the instant suit for trade

mark infringement and unfair competition. The defendant in its answer asserted, first, that all of the plaintiff's marks were invalid and had been illegally registered for the reason that they were merely descriptive of the goods with which they were used, and second, that the mark in its earlier forms had been abandoned, and then, admitting its use of the advertising matter complained of, it denied that such advertising infringed any of the plaintiff's marks or constituted unfair competition. Then, by counterclaim, it asked for a judgment ordering the cancellation of all the plaintiff's marks pursuant to § 37 of the Trade Mark Act of 1946, the so called Lanham Act, 60 Stat. 427, 440, 15 U.S.C.A., § 1119, which by its terms, § 46, became effective on July 5, 1947, while the instant suit was pending. The court below after hearing held that the plaintiff's marks were valid, that none of them had been abandoned, and that the defendant had infringed and was unfairly competing with the plaintiff by the use of advertising matter showing a woman pouring from a can into a toilet bowl, but not by the use of advertising matter showing merely a woman's hand pouring from a can into a toilet bowl. From the final judgment enjoining the defendant in keeping with these conclusions both parties have appealed; the defendant from so much of the judgment as adjudicates the validity and infringement of the plaintiff's marks, the plaintiff from so much thereof as adjudicates that its marks are not infringed by the defendant's advertising matter showing merely the woman's hand. In the view we take of the case it will be necessary to give detailed consideration only to the defendant's appeal.

Its first contention is that the plaintiff's pictorial representation of a woman pouring the contents of a can into a watercloset bowl does not constitute a valid trade mark under either the common law or the Trade Mark Act of 1905, as amended, for the reason that it is merely descriptive of the plaintiff's product. We do not agree.

Cases involving the validity of symbols or devices as identifying marks for goods, i. e. trade marks strictly speaking, as distinguished from names used as trade marks, are comparatively rare. But there can be no doubt that "Whether a picture can be a trade-mark for goods depends upon the same test that is applied in determining whether words can be trade-marks," the question in each case being "whether the picture is merely descriptive of the goods on which it is used or has an arbitrary or fanciful significance in relation to them", Am.Law Inst., Restatement of Torts, § 721 comment d. And the test of validity at common law is also the test for registerability under the third proviso of § 5 of the Trade Mark Act of 1905, as amended,[1] 15 U.S.C.A.1946 Ed. § 85 [15 U.S.C.A. § 1052], for that proviso is "simply an expression in statutory form of the prior general rule of law that words [and clearly also devices] merely descriptive are not a proper subject for exclusive trademark appropriation." P. D. Beckwith's Estate v. Commissioner of Patents, 252 U.S. 538, 544, 40 S.Ct. 414, 416, 64 L.Ed. 705. And the test of validity was concisely stated by the Supreme Court long ago in the leading case of Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 673, 21 S.Ct. 270, 273, 45 L.Ed. 365, in the following language: "It [a trade mark] may consist in any symbol or in any form of words, but as its office is to point out distinctively the origin or ownership of the articles to which it is affixed, it follows that no sign or form of words can be appropriated as a valid trademark which, from the nature of the fact conveyed by its primary meaning, others may employ with equal truth and with equal right for the same purpose." See also Canal Co. v. Clark, 13 Wall. 311, 20 L.Ed. 581, in which it was held that the name "Lackawanna" could not be exclusively appropriated for coal emanating from that region of Pennsylvania, and in addition see Bristol Co.

---

1. *Provided,* That no mark which consists * * * merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods * * * shall be registered under the terms of this subdivision of this chapter.

v. Graham, 8 Cir., 199 F. 412, in which it was held that a mere representation of a steel belt lacing of a type in the public domain, the patent thereon having expired, could not be appropriated, even by the original patentee, as a valid trade mark for that product.

Application of the foregoing test would seem clearly to indicate that a mere representation of a can with a powdered material flowing from it into a watercloset bowl could not constitute a valid trade mark for the product here involved for one "has no right to appropriate a sign or a symbol, which, from the nature of the fact that it is used to signify, others may employ with equal truth, and therefore have an equal right to employ for the same purpose." Canal Co. v. Clark, supra, 13 Wall. at page 324, 20 L.Ed. 581, quoting with approval from Amoskeag Manufacturing Co. v. Spear & Ripley, 2 Sandf., N.Y., 599. But this does not establish that the plaintiff's marks are invalid, for even though they include a common merely descriptive element, i. e., a representation of material flowing from a can into a toilet bowl, they also include representations of women in a particular dress, standing in a particular pose, pouring from the can into a watercloset bowl of a particular design. The marks therefore consist not only of a merely descriptive element, but also of arbitrary and fanciful elements, and it is clearly established that such a composite mark is not rendered invalid by reason of the inclusion therein of some element, or elements, which may with equal truth and equal right be used by others. The reason for this is that "The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail", P. D. Beckwith's Estate v. Commissioner of Patents, supra, 252 U.S. at pages 545, 546, 40 S.Ct. at page 417, 64 L.Ed. 705, so that a composite mark is valid if, in addition to its merely descriptive element, it also contains fanciful or arbitrary elements sufficient to give it enough individuality so that viewed as an entirety it can perform its function of pointing distinctively to the origin of the goods to which it is applied. P. D. Beckwith's Estate v. Commissioner of Patents, supra; Am.Law Inst., Restatment of Torts, § 724. We therefore conclude that the plaintiff's marks are valid, and hence were properly entitled to registration, for viewing them as a whole they are not merely descriptive, but are original, arbitrary and fanciful.[2]

It does not follow from this conclusion of validity, however, that the plaintiff is entitled to appropriate exclusively unto itself the merely descriptive element of its composite marks. It cannot prevent the defendant from using on its labels or in its advertising (we are assuming that one may infringe under the federal act of 1905 by advertising matter as well as by label, Mishawaka Rubber & Woolen Mfg. Co. v. Panther-Panco Rubber Co., 1 Cir., 153 F.2d 662, 666) a representation of material flowing from a can into a watercloset bowl. Indeed the plaintiff does not contend that it has the right to do so.

Nor do we think that the plaintiff can prevent the defendant from going one step further and advertising its products by showing it in use by a person, and, moreover, in use by the sort of person who would normally be expected to use it, that is, by a woman. We base this conclusion upon common knowledge (although cf. Jantzen Knitting Mills v. Herlich et al. (U.S.D.C.E.D.Pa.1934), 24 Trade Mark Rep. 48) for certainly the representation of products in use by the sort of persons who use them is one of the commonest devices in all advertising. A mere glance at the advertising section of almost any newspaper or periodical renders it unthinkable

2. This conclusion obviously renders it unnecessary for us to consider whether the defendant is entitled to an order cancelling the plaintiff's marks under the provisions of § 37 of the Lanham Act, supra.

Moreover, since the plaintiff's later marks are valid, if the defendant has infringed them the plaintiff is entitled to injunctive relief, the only relief afforded or contended for, and therefore there is no occasion for us to consider whether or not the plaintiff's earlier marks have been abandoned.

that any single manufacturer of such products as, for instance, women's underclothing, bathing suits or stockings, to mention only a few outstanding examples, can possibly be entitled to appropriate unto itself alone the exclusive right to advertise its products by representing them in use. Of course, the defendant cannot represent its product in use in such a setting, or in such a way, as to render it likely that the purchasing public will confuse its product with that of the plaintiff. But this does not mean that the defendant is relegated to advertising its product by showing it in use by an old crone in a mother hubbard with a scowl on her face. Clearly in advertising, to quote from the current musical play "South Pacific", "There is nothing like the frame of a dame", and we cannot see why the defendant is not as much entitled to take commercial advantage of pulchritude as the plaintiff.

We mention these matters at some length for it seems to us that the District Court's conclusion of infringement, with which we feel constrained to disagree, could only have rested upon the defendant's use in its advertising of the foregoing elements which we think it was free to use, because, aside from those elements, the defendant's advertising bears little or no resemblance to the plaintiff's marks.

In the first place the plaintiff's marks are all on a plain background whereas the defendant's advertising usually showed a bathroom setting, including a bath tub, shower curtain, tiled walls, etc. In the second place the defendant in all its advertising prominently displayed its trade mark "Vanish" which is not at all similar to the plaintiff's name "Sani-Flush". And in the third place the human female figures in the defendant's advertising are by no means strikingly similar to the ones used by the plaintiff in any of its marks. The plaintiff's earlier marks showed women dressed as housemaids, and its later ones showed a woman dressed conservatively as a matronly middle-aged housewife. The defendant, on the other hand, never used a housemaid in its advertising, but showed therein a very slim young housewife, perhaps a bride, ultra-fashionably dressed, i. e.

in a very short skirt, wearing an elaborate apron, and standing in an exaggeratedly graceful bending posture pouring into a watercloset bowl with an expression of almost ecstatic delight upon her face. This contrasts sharply with the more conservative dress, staid posture, and expression of restrained joy on the faces of the women in all the plaintiff's trade marks, to say nothing of the rather buxom figure of the woman appearing in its later ones.

Furthermore, the defendants' distinctive name and its laudatory slogans of "It's NEW!". "It's a pleasure to use", "A NEW way to keep Your Bathroom fresh and sweet", "Leaves fresh minty Fragrance" and "Cleans toilet bowls without scrubbing", which are quite different from the plaintiff's slogans, serve to sharply differentiate the defendant's advertising from the plaintiff's marks.

Viewed as an entirety, for the commercial impression of an advertisement no less than a trade mark is derived from it as a whole, not from its separate elements considered apart and in detail, it seems to us clear that these distinctive features of the defendant's advertising, in spite of its use therein of the feature it is entitled to employ, that is to say, an alluring young woman using its product, prevent the possibility of there being any genuine likelihood that purchasers of "Vanish" would be so confused by the advertising of that product that they would think they were purchasing "Sani-Flush."

What we have said with respect to trade mark infringement in large measure disposes of the plaintiff's claim for unfair competition. It may be that a merchant or manufacturer can, over a long period of time, make such a distinctive and original arrangement of advertising features common to all, that a competitor who colorably imitates his distinctive style, format and juxtaposition of elements, will be guilty of unfair competition. But it does not appear that the plaintiff has developed any unique style or pattern of advertising peculiarly its own, except for showing its product in use as others are free to do. On the contrary in its advertising over the years it has shown its product in use by

a great many different models, in a variety of poses and dresses against different backgrounds, even including a representation of a little girl with an expression of disgust on her face over the caption "We don't talk about toilets!"

To be sure, it once over the caption "I know its SAFE in Septic tanks", displayed its product in use by a young woman in pose and dress quite closely resembling the young women commonly used by the defendant, but this, as we have shown, does not give it the right to exclude others, even direct competitors, from the use of representations of fashionably dressed and attractive young women in advertising.

The foregoing conclusion renders it unnecessary for us to consider the plaintiff's cross appeal, for if the defendant can use a representation of an entire woman in its advertising, *a fortiori* it can use a representation of only a woman's hand therein.

In conclusion it will suffice to say that the defendant's advertising viewed as a whole by no means so closely resembles either the plaintiff's mark or its advertising, viewed also as a whole, as to warrant the conclusion that anyone seeing it would be likely to confuse the defendant's product with that of the plaintiff.

*The judgment of the District Court is vacated and the case is remanded to that court for the entry of a judgment for the defendant; the defendant recovers costs on appeal.*